IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-4908
_____


DONALD GREGORY LINTON,

Plaintiff-Appellant,

versus

GREAT LAKES DREDGE & DOCK COMPANY
and STEAMSHIP MUTUAL UNDERWRITING
ASSOCIATION (BERMUDA) LTD.,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Western District of Louisiana

_____
( June 22, 1992 )

Before POLITZ, Chief Judge, REAVLEY, and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case is an interlocutory appeal of the district court's denial of Linton's motion to remand the case to state court. The district court based its denial of remand on grounds that the federal court had exclusive admiralty jurisdiction over Linton's Jones Act and general maritime claims because he had elected, pursuant to a Louisiana statute, to try those claims to a judge instead of a jury. For the reasons discussed below, the order of the district court is reversed and the district court is directed to remand the case to the state court.

On January 9, 1989, Donald Gregory Linton (Linton) and his wife, Telitha Linton, filed this suit in Louisiana state court against his employer, Great Lakes Dredge and Dock Company, seeking damages for personal injuries suffered while working as a seaman on the CONICAL, a dredge owned by Great Lakes. The suit was grounded on general maritime law and the Jones Act, 46 U.S.C. § 688. Linton's Fourth Supplemental and Amending Petition filed in state court designated his suit as "an admiralty or general maritime law claim" pursuant to LA. CODE CIV. PROC. ANN. art. 1732(6).[1]

The essence of this case is the effect of such a designation. According to Linton, the designation is purely procedural: it simply allows the plaintiff the option of having his case tried to a Louisiana judge instead of a jury. Great Lakes cites language in the legislative history that indicates its purpose is to allow Louisiana law to track federal law.[2] It argues that an article

---

[1]LA. CODE CIV. PROC. ANN. art 1732(6) (West 1990) provides:
A trial by jury shall not be available in:
(6) A suit on an admiralty or general maritime claim under federal law that is brought in state court under a federal "saving to suitors" clause, if the plaintiff has designated that suit as an admiralty or general maritime claim.
Id.

[2]"[I]n federal court if you file your admiralty action under the Jones Act, you, as the plaintiff or as the complainant, have the option of electing whether or not to have a trial by jury. In state court, if you file that same action using the saving to suitors clause invoking your federal maritime jurisdiction ... you

1732(6) designation is the same as a Rule 9(h)[3] designation under the Federal Rules of Civil Procedure:  it withdraws Linton's claims "at law" under the "saving to suitors" clause and invokes the exclusive admiralty jurisdiction of the federal courts.  On this basis, and pursuant to 28 U.S.C. § 1441,[4] Great Lakes removed the suit to federal district court.  Linton promptly moved to remand pursuant to 28 U.S.C. 1447(c) contending that the case had been improvidently removed and that the district court lacked "the jurisdiction alleged by defendant."  Following denial of Linton's

_____

may be entitled to the jury if you ask for it, others say it doesn't matter, if the defendant asks for it we may have a jury trial.  So all I'm trying to do is track exactly the federal rules of procedure in essence saying you as the complainant or the seaman have the right to control the actions of whether or not you want a jury trial or not."  Heinhuis v. Venture Assoc., Inc., 558 So.2d 1244, 1246 (La.App. 1 Cir.), writ den., 559 So.2d 1369 (La.), motion den., writ den., 559 So.2d 1385 (La. 1990) (citing remarks of Rep. Hunt Downer (sponsor of bill inserting paragraph (6) into article 1732) before La. House Civil Law & Procedure Committee, May 10, 1988).

> [3]Rule 9(h) reads in pertinent part:
> A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims.

FED. R. CIV. P. 9(h).  Rule 38(e) states "[t]hese rules shall not be construed to create a right to trial by jury . . . in an admiralty or maritime claim within . . . Rule 9(h)."  FED. R. CIV. P. 38(e).

[4]"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States."  28 U.S.C. 1441(a).

motions to remand and for reconsideration, the district court again denied remand, holding that by virtue of Linton's designation of his claim as an "admiralty or general maritime claim," the federal court had exclusive jurisdiction in admiralty. Linton v. Great Lakes Dredge & Dock Co., No. 90-1780, Amended Ruling at 3 (W.D.La. 1990). The court also certified the order in accordance with the provisions of 28 U.S.C. § 1292(b). Linton timely petitioned this court for permission to appeal, which was granted, and this appeal followed.

II

Our discretionary grant of an appeal in this case limits us to the sole question of the propriety of the district court's refusal to remand this case to the Louisiana court. See 16 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3929 at 143 (1977) (scope of issues open to court of appeals is closely limited to the order appealed from)(hereinafter Wright & Miller). This refusal is subject to appellate review. See, e.g., In re Dutile, 935 F.2d 61, 62 (5th Cir. 1991) (court granted application for writ of mandamus after district court refused to certify appeal of order denying motion to remand). Although it might appear that a plain reading of 28 U.S.C. § 1445(a) (Jones Act cases filed in state court are not removable) decides this case, we have nevertheless held that this statutory bar to removal may be waived by the plaintiff. Lirette v. N. L. Sperry Sun, Inc., 820 F.2d 116 (5th Cir. 1987). If, as Great Lakes argues, Linton's article 1732(6) election

-4-

amounted to election of an exclusive federal admiralty remedy, then that election was also a waiver of the bar to removal and we may not say that this case simply was not removable in the first instance. We, therefore, turn to examine the merits of the district court's refusal to remand this case. In examining the nature of these claims, we point out that Linton presents both general maritime and Jones Act claims. Each stems from different historical roots and, thus, we must consider them separately because these different origins bear directly upon the jurisdictional significance of a maritime plaintiff's election of a non-jury trial.

III

We turn first to consider whether the general maritime claims asserted by Linton fall within the exclusive admiralty jurisdiction of the federal court if tried to the bench rather than to a jury. We begin by observing that one of the grants of judicial power in the Constitution is of "all Cases of admiralty and maritime Jurisdiction." U.S. CONST. art. III, § 2. The 1st Congress implemented this grant in the following words:

> [T]he district courts . . . shall also have exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction . . . saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it.[5]

_____

[5]The current version of the statute provides:

> The district courts shall have original jurisdiction, exclusive of the courts of the

Section 9 of the Judiciary Act of 1789 (cited in GRANT GILMORE &
CHARLES L. BLACK, JR., THE LAW OF ADMIRALTY § 1-9 (2d ed. 1975)
(hereinafter Gilmore & Black); 14 Wright & Miller § 3671 at 408.
Putting aside the complex question of just what fell within the
"admiralty and maritime jurisdiction," it became clear as the case
law evolved that

> a suitor who holds an *in personam* claim, which might be
> enforced by suit *in personam* in admiralty, may also bring
> suit, at his election, in the `common law' court--that
> is, by ordinary civil action in state court, or in
> federal court without reference to `admiralty,' given
> diversity of citizenship and the requisite jurisdictional
> amount.

Gilmore & Black § 1-13; see also THOMAS J. SCHOENBAUM, ADMIRALTY
AND MARITIME LAW § 3-13 (1987) (hereinafter Schoenbaum) ("Since the
common law is competent in all cases where the suit is *in personam*,
a plaintiff in such causes may elect either to proceed in admiralty
or to bring an ordinary civil action, either at law in state court

---

States, of:
(1) Any civil case of admiralty or maritime
jurisdiction, saving to suitors in all cases
all other remedies to which they are otherwise
entitled.

28 U.S.C. § 1333.  The "saving to suitors" clause was changed by a
1948 revision of the statute.  The Revision Notes state that "[t]he
substituted language is simpler and more expressive of the original
intent of Congress and is in conformity with Rule 2 of the Federal
Rules of Civil Procedure abolishing the distinction between law and
equity."  Id.   Gilmore and Black are critical of this comment,
saying:   "[I]t seems unnecessary to comment on the claim of
`simplicity.'  As far as the `intent of Congress' goes, it seems
. . . best to let the courts be the judges of that . . . [or] at
least to codify . . . the main effect of the judicial decisions,
which was to exclude the state courts from in rem suits."

or in a federal district court under federal diversity jurisdiction (or some other basis of federal jurisdiction).").[6]

Shortly after the War Between the States, the Supreme Court held that the *in rem* remedy was within the exclusive jurisdiction of the federal courts and that the states were not permitted such proceedings.[7]  This holding was based on the premise that the *in rem* suit was not a "common law remedy."  The Moses Taylor, 71 U.S. (4 Wall.) 411, 431 (1867); The Hine v. Trevor, 71 U.S. (4 Wall.) 555, 571 (1867); Gilmore & Black § 1-13.  There was, however, no perceived bar to *in personam* suits in state courts.  Schoenbaum states that the policy basis for concurrent jurisdiction is that

---

[6]In  a much simplified analysis, we can classify admiralty claims as follows:  1) *in personam*, in which the defendant is a "person" (including corporations) and in which collection of a judgment involves tracing assets, garnishing them, etc. with all the attendant difficulties of collection; 2) *in rem*, in which a "vessel" (or other property) is the defendant and in which a judgment becomes a lien on the vessel (or other property) and may be enforced and collected by sale of the vessel (or other property), a sale which conveys title "good against the world." Gilmore & Black § 1-12.

[7]Furthermore, an action *in rem* is not available in an action "at law" in federal court.  See, e.g., 14 Wright & Miller § 3672 ("[I]n rem jurisdiction . . . is unavailable in actions at law in either the state or federal courts.)  In support of its argument that Linton's article 1732(6) election removed the protection of the "saving to suitors" clause, Great Lakes correctly points out that "an *in rem* action is but one of the numerous admiralty remedies not available in an action `at law'; state courts do not have concurrent jurisdiction over actions for limitations of liability or [various named statutes]."  The counter to this point is, however, that in each of those instances the exclusive jurisdiction of the federal court is established by specific congressional action.  The *in rem--in personam* distinction in respect to federal jurisdiction, in contrast, has developed through more than 100 years of case law.

"the common law courts had the power to hear such cases prior to the adoption of the Constitution." Schoenbaum § 3-13 n.2. He points out that "[c]oncurrent jurisdiction is statutory, not constitutional, based upon the saving to suitors clause."[8] Id. Although the common law courts were allowed by Congress (by means of the "saving to suitors" clause) to continue to provide common law remedies, the substantive law applied had to be the general maritime law, as modified by Congressional action. Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 384 (1918); see, e.g., Pizani v. M/V Cotton Blossom, 669 F.2d 1084, 1087-89, 1088 n.2 (5th Cir. 1982) (*in personam* judgment of liability affirmed; damage award based on state and common law reversed and remanded for application of maritime rule). Remedies created by state statute could not be enforced by actions brought in state court under the "saving to suitors" clause if the

> legislation ... contravenes the essential purpose
> expressed by an act of Congress or works material
> prejudice to the characteristic features of the general
> maritime law or interferes with the proper harmony and
> uniformity of that law in its international and
> interstate relations.

Southern Pacific Co. v. Jensen, 244 U.S. 205, 216 (1917). However, if state legislation passes this test, or a common law right is widely recognized, it may be enforced, even by invoking the

---

[8]Schoenbaum also points out that state law attachment, whereby a defendant's interest in property is seized to guarantee the defendant's appearance in court or seized and sold to satisfy a judgment, is "also saved to suitors under the saving clause." Schoenbaum, § 3-13 n.2.

admiralty jurisdiction of the federal courts.  14 <u>Wright & Miller</u>
§ 3672.[9]

A

In its Amended Ruling, the district court refused to remand
this case:

> The defendants argue that once [the article 1732(6)]
> designation was made, the plaintiffs effectively withdrew
> their request for a remedy under the saving to suitors
> clause and asserted an action within the exclusive
> federal admiralty jurisdiction, making the case removable
> pursuant to 28 U.S.C. § 1441.  In view of the historical
> federal interest in creating a uniform body of maritime
> law, this court agrees.  By making the Louisiana
> statutory counterpart of what is essentially a Rule 9(h)
> declaration . . . the plaintiff essentially seeks a
> remedy in admiralty [which] the common law is not
> competent to give but which lies within the maritime
> jurisdiction reserved exclusively to the federal
> sovereign.

<u>Linton v. Great Lakes Dredge & Dock Co.</u>, Amended Ruling at 3.

In breaking down further the district court holding, we can
correspond its rationale to the arguments that are being made
before us today.  The Lintons' designation by which they "withdrew"
their claim under the saving to suitors clause and "asserted an
action within the exclusive federal admiralty jurisdiction"
corresponds with Great Lakes' argument that Linton's article
1732(6) designation amounted to an <u>election</u> of an admiralty claim
within the exclusive federal jurisdiction.  The district court

---

[9]<u>Wright and Miller</u> cites the widespread use prior to 1970 of
state wrongful death statutes to allow recovery within that state's
navigable waters even though the general federal maritime law did
not provide such a right to recovery.  14 <u>Wright & Miller</u> § 3672.

referred to article 1732(6) as the Louisiana "equivalent" of Fed. R. Civ. P. 9(h). We take this statement to mean only that the district judge was concluding that a choice of a non-jury trial of a maritime matter in state court would impermissibly create an admiralty docket in state court. This expression of the issue is, for our purposes today, only another way of saying that the choice of a non-jury trial of a maritime matter automatically transforms that matter into a true admiralty case over which the federal court has exclusive jurisdiction.

Further, the district court's statement concerning the inability of the common law to provide a non-jury remedy under the "saving to suitors" clause and the attendant exclusive federal jurisdiction, accords with the arguments by Great Lakes and Amicus, Maritime Overseas Corp., that a jury trial is such an essential part of any "common law remedy" that, if dispensed with, whatever remedy remains is not a remedy the common law "is competent to give."[10]

---

[10]Great Lakes also argues that article 1732(6) is an attempt by Louisiana to create "an admiralty side of state court which can have no constitutional foundation." We address this argument later in this opinion. See infra nn.12, 13 and surrounding text. Amicus, Maritime Overseas Corp. (Amicus or Maritime), presents Supremacy Clause and Seventh Amendment arguments that were not presented below. We will not consider those arguments here for the first time.

In considering what we will denominate the "election" and "saving to suitors" arguments made against article 1732(6), we first examine the "saving to suitors" argument--that only jury trials are saved. Title 28 U.S.C. § 1333 no longer "saves to suitors" only a common law remedy. It now specifically saves "all other remedies to which they are otherwise entitled." Gilmore & Black states that "this quite unnecessary change in phraseology . . . might imperil those decisions which . . . exclude state courts from entertaining *in rem* proceedings." Gilmore & Black § 1-13. The professors then argue that Madruga v. Superior Court, 346 U.S. 556 (1954), "intimates that, by main force, the new language will be taken to mean the same thing as the old."[11] Id. They point out that the meaning of the revised language was not resolved by Madruga and that, in fact, the question as to whether the "saving to suitors" clause was expanded remains open. Id. The Revision Note states that the revised language "is in conformity with . . . [the abolition of] the distinction between law and equity." 28 U.S.C. § 1333 Revision Notes.

Madruga affirmed the partition sale of a ship by a state court. 346 U.S. at 562, 564. The Court determined that not only was such a sale within the admiralty jurisdiction of the federal

---

[11]"We take it that this change in no way narrowed the jurisdiction of the state courts under the original 1789 Act." Madruga v. Superior Court, 346 U.S. 556, 560 n.12 (1954).

courts, <u>id.</u> at 560, but also that the "saving to suitors" clause gave the state court concurrent jurisdiction of the disputed *in personam* partition action.  <u>Id.</u>  The Court stated:

> "Aside from its inability to provide a remedy *in rem* for a maritime cause of action, this Court has said that a state, `having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit' so long as it does not attempt to make changes in the `substantive maritime law.'"

<u>Madruga</u>, 346 U.S. at 561 (citing <u>Red Cross Line v. Atlantic Fruit Co.</u>, 264 U.S. 109, 124 (1924)).  <u>Red Cross Line</u> had specifically stated that:

> The "right of a common-law remedy," so saved to suitors, does not . . . include attempted changes by the states in the substantive admiralty law, but it does include all means other than proceedings in admiralty which may be employed to enforce the right or redress the injury involved.  It includes remedies in pais, as well as proceedings in court; judicial remedies conferred by statute, as well as those existing at the common law; remedies in equity, as well as those enforceable in a court of law.  <u>Knapp, S. & Co. v. McCaffrey</u>, 177 U.S. 638, 644 . . . [1900]; <u>Rounds v. Cloverport Foundry & Mach. Co.</u>, 237 U.S. 303 . . . [1915].  A state may not provide a remedy *in rem* for any cause of action within the admiralty jurisdiction.  <u>The Hine v. Trevor</u>, 4 Wall. 555 . . . [1867]; <u>The Glide</u>, 167 U.S. 606, . . . [1897]. But otherwise, the state, having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit.

<u>Red Cross Line v. Atlantic Fruit Co.</u>, 264 U.S. 109, 124 (1924).  We conclude, therefore, that a non-jury trial in state court is not, in and of itself, offensive to the general maritime law. Furthermore, a statutory provision for a non-jury trial, in and of itself (absent any pretense at *in rem* proceedings), does not constitute an attempt to create "an admiralty side of state court

-12-

which can have no constitutional foundation."[12]  We think that, particularly in view of the revised wording of the "saving to suitors" clause, the Supreme Court cases do not require a jury trial as an element of a "saving to suitors" remedy.  Stated differently, a maritime non-jury action is not necessarily outside the "saving to suitors" clause and within the exclusive admiralty jurisdiction of the federal courts.[13]

C

We next examine the "election" argument in which Great Lakes argues that Linton, by designating his claim as an "admiralty and general maritime" claim under article 1732(6), necessarily "elected," albeit unwittingly, to pursue his cause of action as a Rule 9(h) "admiralty" claim within the exclusive federal jurisdiction.  This argument has been correctly addressed in Pellegrin v. International Independent Towing, No. 88-5255, slip op. at 3-4 (E.D. La. March 6, 1989) in which the court stated:

_____

[12]We do not address arguments that the Louisiana courts have held that a jury trial is guaranteed by Louisiana law.  This argument was not made below and constituted no basis for the ruling of the district court.  It is properly presented in Louisiana's courts.

[13]In a case involving in personam negligence and unseaworthiness claims by the widow of a Sieracki seaman, the Court stated that "Louisiana courts have broad jurisdiction of admiralty cases such as this and have frequently exercised it.  [I]t is the duty of the Louisiana courts to adjudicate this case." Jackson v. Lykes Bros. S.S. Co., 386 U.S. 731, 735 (1967).  Although the case does not address the jury trial question, it does emphasize the concurrent jurisdiction of state and federal courts over in personam admiralty claims.

[W]hile the plaintiff's designation significantly affects state court procedure, it has no effect on state court (or federal removal) jurisdiction. Generally . . . a plaintiff may elect to bring a maritime *in personam* action (1) "in admiralty," or (2) "at law." E.g., 28 U.S.C. § 1333; Leon v. Galceran, 78 U.S. (11 Wall.) 185, 191 (1871).

If the plaintiff elects to proceed "in admiralty," not only must he sue in federal court . . . but he must also designate his federal claim as "an admiralty and maritime claim" under Federal Rule of Civil Procedure 9(h). . . . Procedurally, the "9(h)" claim is tried before the court, not before a jury. See Fed. R. Civ. P. 38(e).

On the other hand, if the plaintiff elects to proceed "at law," he has two options. First, he could sue on the "law side" of the federal court (i.e., without a "Rule 9(h)" designation) if there exists an independent, nonadmiralty basis of jurisdiction. Procedurally, the "law" claim could be tried by a jury. See U.S. Const. amend. VII; Fed. R. Civ. P. 38(a). Second, plaintiff could sue "at law" in state court. Procedurally, whether he, or the defendant, would have a right to trial by jury would depend on state civil procedure. In Louisiana, the governing procedural provision is [article 1732(6) and under that provision] the defendant has no right to a jury trial if plaintiff designates his claim as an "admiralty or maritime" claim. [citation omitted.]

This procedural consequence is the sole effect of an article 1732(6) designation; it has no jurisdictional significance. The designation simply cannot transform the basis of state court jurisdiction from "law" jurisdiction to "admiralty" jurisdiction . . . ..Because admiralty jurisdiction is exclusively federal, a true "admiralty" claim is never cognizable in state court; no "designation" or state procedure can alter this. E.g., The HINE v. Trevor, 71 U.S. (4 Wall.) 555 (1866) (Supremacy Clause prohibits true "admiralty" claims in state court).

$\underline{Id}$.[14]  As noted above, only *in rem* admiralty claims (and certain statutory actions) are within the exclusive federal jurisdiction. Obviously the election under Louisiana law of a non-jury trial does not, alone, convert an *in personam* action at law to an *in rem* action in admiralty.

D

Great Lakes next gives a constitutional twist to its argument that the "saving to suitors" clause applies only to actions tried to a jury:  Because the "saving to suitors" clause, protecting actions at common law, is an act of Congress, the Seventh Amendment right to a jury trial in common law actions follows any maritime action "at law" under that clause.  The abolition of that right by a state means, therefore, that the action becomes one outside the "saving to suitors" clause and within the exclusive federal admiralty jurisdiction even though not an *in rem* action.

Our holding above, to the effect that the "saving to suitors" clause, as amended and as interpreted by the Supreme Court, "saves" both jury and non-jury actions effectively applies to this

---

[14]It is argued that the election of a non-jury trial is not solely "procedural" but that the Louisiana courts have said that article 1732(6) is "substantive" and affects a "fundamental" right to jury trial guaranteed by Louisiana law.  This argument may be correct but the place for it is Louisiana's courts.  See supra n.12. Assuming that the article 1732(6) designation is not merely procedural, we still cannot say the article presently affects the substantive maritime law:  it provides a "means other than a proceeding in admiralty which may be employed to enforce the right or redress the injury involved," but does not alter the seaman's rights or redress available in connection with the injury sustained in maritime employment.  Red Cross Line, 264 U.S. at 124.

argument. Nevertheless, we point out that the argument that Congress's creation of a federal right creates an appurtenant Seventh Amendment guarantee was rejected long ago by the Supreme Court when it affirmed a Federal Employer's Liability Act judgment based on a jury verdict, permitted by Minnesota law, that was rendered by 10 of a 12 person jury. <u>Minneapolis & S. L. R.R. Co. v. Bombolis</u>, 241 U.S. 211, 216 (1916). Although the Seventh Amendment requires a unanimous verdict, the Court made clear "that the 7th Amendment applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regulate trials by jury in state courts, or the standards which must be applied concerning the same." <u>Id.</u> at 217.[15]

E

In sum, we see no reason why Linton may not pursue his maritime claims (considered alone and separately from his Jones Act claim) in Louisiana's courts under the "saving to suitors" clause regardless of the fact that those courts may or may not provide trial before a jury. Whether Linton's maritime claims are removable, then, depends on factors other than his election of a

---

[15]We note that Amicus, Maritime Overseas Corp., argues that article 1732(6) violates the Fourteenth Amendment's equal protection clause "by denying [admiralty and maritime defendants] the jury trial right [Louisiana] affords defendants in analogous negligence and wrongful death cases arising under state law." This argument was not raised in the court below and is presented here for the first time. This argument deserves full briefing and adversary presentation. In any event, we will not decide the issue now.

non-jury trial, including, but not limited to, the citizenship of the parties, the amount in controversy, etc.  See, e.g., In re Dutile, 935 F.2d 61, 62-63 (5th Cir. 1991) ("admiralty and maritime claims may be removed to federal court only by non-forum defendants and only where there is complete diversity of citizenship").  For the reasons set forth below, we find that Linton's maritime claims are not removable in this case.

## IV

We next examine this appeal as it relates separately to the Jones Act claim:  Whether the non-jury designation of this claim in state court characterizes it as an admiralty case within the exclusive federal jurisdiction.[16]  We turn first to review briefly the relevant background of the Jones Act.

## A

---

[16]Great Lakes also argues that its right to a jury trial in state court is guaranteed by the Seventh Amendment because the Jones Act is a federal law to which the right to trial by jury otherwise attaches.  For the same reasons set out in analysis of this argument in connection with Linton's maritime claims, we reject it.  The Seventh Amendment "applies only to proceedings in courts of the United States, and does not in any manner whatever govern or regulate trials by jury in state courts, or the standards which must be applied concerning the same."  Minneapolis & S. L. R.R. Co. v. Bombolis, 241 U.S. 211, 217 (1916).  Furthermore, we have previously made it clear that only when a Jones Act claim is brought in federal court, under the "saving to suitors" clause, and based on diversity jurisdiction, does the Seventh Amendment give the defendant the right to elect a jury trial.  Rachal v. Ingram Corp., 795 F.2d 1210, 1213, 1215-16, 1216 n.8 (5th Cir. 1986).  Otherwise, "the Jones Act gives only the seaman-plaintiff the right to choose a jury trial."  Id. at 1215 (emphasis ours).

Before passage of the Jones Act, a seaman could not recover for injuries caused by "the negligence of the master, or any member of the crew" although recovery was permitted for the seaman's injuries caused by unseaworthiness of the vessel, as well as for maintenance and cure. The Osceola, 189 U.S. 158, 175 (1903). In 1920, Congress passed the Jones Act which "in substance provided that a seaman injured in the course of his employment by the negligence of owner, master or fellow crew members could recover damages for his injuries." Gilmore & Black § 6-3. The Jones Act thus broadened the remedies of a seaman by incorporating by reference the Federal Employers' Liability Acts (FELA). Id. § 6-26. "Under FELA any employee of an interstate carrier by rail may recover damages from the carrier for injury or death [resulting from the negligence of any of its officers, agents or employees, or from any defect in equipment.]" Id.[17] The Act currently provides:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; . . . .

46 U.S.C. § 688(a).

---

[17]FELA removed contributory negligence as a bar to recovery, but allowed a reduction of recovery based on the employee's comparative negligence. Gilmore & Black § 6-26. Assumption of risk as a defense was also eliminated in certain circumstances. Id.

Thus the Jones Act provided the seaman an _alternative_ ("at his election"), which is "an action for damages at law, with the right of trial by jury." Although the Jones Act does not expressly state the fact that the antecedent right implicit in the statute is that of a trial in admiralty, the Supreme Court has said "the statute leaves the injured seaman free . . . to assert his right of action . . . on the admiralty side of the court.  On that side the isssues will be tried by the court, but if he sues on the common law side there will be a right of trial by jury." _Panama R. Co. v. Johnson_, 264 U.S. 375, 391 (1924).  This court has said "[a] seaman having a Jones Act remedy may elect the remedy of a suit in admiralty or civil action at law."  _Doucet v. Wheless Drilling Co._, 467 F.2d 336, 339 (5th Cir. 1972) (citing _Panama R. Co. v. Johnson_, 264 U.S. 375 . . . (1924)); _Balado v. Lykes Bros. S.S. Co._, 179 F.2d 943, 945 (2d Cir. 1950); _McCarthy v American Eastern Corp._, 175 F.2d 724, 726 (3d Cir.), _cert._ _denied_, 338 U.S. 868 . . . (1949).

B

Great Lakes argues, as it does with respect to the general maritime claim, that by designating his claim as an "admiralty and maritime claim" and, thus, electing a non-jury trial in a Jones Act case in state court, Linton necessarily has chosen to proceed within the exclusive admiralty jurisdiction of the federal court. Great Lakes essentially argues that Linton's choices for trial of his Jones Act claim are exclusive:  _either_ 1) an admiralty trial, available only in federal court because, pursuant to Article III of

-19-

the Constitution, there can be no state admiralty docket, or 2) an action at law, which must be tried to a jury, available in state or federal court.

We have explained the seaman-plaintiff's choice when he sues in federal court as follows:

> [T]he Jones Act gives only the seaman-plaintiff the right to chose a jury trial.  With certain exceptions that are not involved here [limitation actions], a plaintiff has the right to select either an admiralty or a legal forum under the saving to suitors clause.  The Federal Rules preserve this right by allowing the plaintiff to designate his action as one in admiralty or to treat it as a civil action.

Rachal v. Ingram Corp., 795 F.2d 1210, 1215 (5th Cir. 1986) (citations omitted).  The statute makes it clear that the right to an "action for damages at law" protects the seaman's "right of trial by jury."  Rachal, 795 F.2d at 1213, 1215; see 46 U.S.C. § 688(a) ("with the right of trial by jury"); Bailey v. Central Vermont Ry., 319 U.S. 350, 354 (1943) ("`[t]he right to trial by jury is part and parcel of the remedy afforded railroad workers under the . . . Act'"); Dice v. Akron, C. & Y. R.R., 342 U.S. 359, 360, 363 (1952)(same).

Rachal, in speaking of actions in federal court, further states:  "In a nondiversity action under the Jones Act . . . the seaman, on proper request, is entitled to a jury trial only by virtue of the Jones Act statutory grant."  Rachal, 795 F.2d at 1213 (citing Fitzgerald v. United States Lines, 374 U.S. 16, 21 (1963)).  As we pointed out in that case, "when the initial complaint was

filed [under federal question (non-diversity) jurisdiction in federal court] and the plaintiff chose a civil action, <u>the only right to a jury trial belonged to the plaintiff under the Jones Act</u>." <u>Id</u>. at 1217. The seaman-plaintiff, however, is not compelled by the Jones Act to request a jury if he choses to try his Jones Act claim in a civil action--it is simply a right that he possesses, and not the defendant.

Thus, the Jones Act plaintiff can elect a non-jury trial in federal court either 1) by electing to sue in admiralty or 2) by grounding his suit on federal question jurisdiction, i.e., the Jones Act, and not requesting a jury. There is, therefore, no Article III bar to a non-jury trial of a Jones Act claim in an action at law. Therefore, we see no Article III, Seventh Amendment or federal statutory bar that denies the Jones Act plaintiff in state court the right to a non-jury trial if state procedure allows it.

We may also reach the same conclusion--that there is no federal bar to a state non-jury Jones Act action--by applying the saving to suitors clause. As the Supreme Court and our authority have observed, federal jurisdiction in admiralty over a Jones Act claim may be asserted under 28 U.S.C. § 1333. <u>See</u> <u>Panama R. Co. v. Johnson</u>, 264 U.S. 375, 391 (1924) (seaman may assert Jones Act right of action on admiralty side of federal court). This same statute "sav[es] to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). As we

have explained above, there is no bar in the "saving to suitors" clause to a non-jury trial at law. Louisiana's statute allowing a non-jury trial of a maritime claim provides, therefore, a "remed[y] to which [Linton is] otherwise entitled" under that clause. We, thus, conclude that the Jones Act allows the injured seaman to elect a non-jury trial in an action "at law" in a state court, and such election does not, without more, convert the action to one in admiralty.

C

We next consider whether Linton waived the statutory bar to removal of Jones Act cases when he designated his case as a non-jury admiralty matter under the Louisiana statute. 28 U.S.C. § 1445. Based on our analysis of Great Lakes' "election" argument, above, our analysis of the "election" argument in connection with Linton's "maritime" claim, set out in the text at III, C, supra, and our analysis of Great Lakes' Seventh Amendment argument, we conclude that the simple election of a non-jury trial by means of designating his Jones Act claim as an "admiralty or general maritime claim" did not automatically place Linton's case in the exclusive admiralty jurisdiction of the federal courts. Therefore, Linton's election of a non-jury trial in state court of a Jones Act claim did not amount to a waiver of the statutory bar to removal of Jones Act cases from state courts. 28 U.S.C. § 1445. This Jones Act case was not removable in the first instance. Id. Neither were the associated maritime claims removable in this case because

they are not "separate and independent claims."  28 U.S.C. 1441(c); Pate v. Standard Dredging Corp., 193 F.2d 498, 501 (5th Cir. 1952).

## V

Finally we note that the district court, in part, based its refusal to remand on "the historical federal interest in creating a uniform body of maritime law."  Linton v. Great Lakes Dredge & Dock Co., No. 90-1780, Amended Ruling at 3 (W.D.La. 1990).  In this instance, Louisiana's article 1732(6) has no effect on the body of maritime law (including the Jones Act) and does not violate the strictures of Jensen.  As noted in the discussion above, *in personam* admiralty actions have been within the concurrent jurisdiction of state and federal courts for some 200 years.  The substantive federal admiralty law has been and remains applicable to such actions, including those affected by Louisiana's article 1732(6).  There is no need to make a portion of such *in personam* actions removable to federal court in order to maintain the desired uniformity of admiralty law.

## VI

We sum up:  A non-jury trial in state court is not, in and of itself, offensive to the general maritime law, and--absent any pretense at *in rem* proceedings--does not constitute an attempt to create an admiralty side of state court.  In view of the revised wording of the "saving to suitors" clause and Supreme Court authority, a jury trial is not a required element of a "saving to suitors" remedy.  Stated differently, a maritime non-jury action is

not necessarily outside the "saving to suitors" clause and within the exclusive admiralty jurisdiction of the federal courts.

Furthermore, "an article 1732(6) designation . . . has no jurisdictional significance. The designation simply cannot transform the basis of state court jurisdiction from `law' jurisdiction to `admiralty' jurisdiction." Pellegrin v. International Independent Towing, No. 88-5255, slip op. at 3-4 (E.D. La. March 6, 1989). The net effect of Linton's article 1732(6) election is solely that his maritime and Jones Act claims will be tried to the bench and not to a jury. This result does not cause those claims to fall out of the "saving to suitors" clause and into the exclusive federal admiralty jurisdiction. Nor does it amount to an abandonment of the plaintiff's right to file an action "at law" in state court and become an election to pursue an exclusive federal admiralty remedy.

As to Great Lakes' argument that the Seventh Amendment guarantees a jury trial in any "saving to suitors" action in state court, we have found that the "saving to suitors" clause "saves" both jury and non-jury actions. More to the point, the argument that a federal right has an appurtenant Seventh Amendment guarantee applicable to state court proceedings was rejected long ago by the Supreme Court. Minneapolis & S. L. R.R. Co. v. Bombolis, 241 U.S. 211, 216 (1916).

With respect to Great Lakes' Jones Act arguments: We hold there is no Seventh Amendment or federal statutory bar that denies

the Jones Act plaintiff in state court the right to elect a non-jury trial.  We also hold that the election of a non-jury trial in state court by a Jones Act plaintiff does not, of itself, automatically force the case into the exclusive federal admiralty jurisdiction.

There is no need to make *in personam* actions affected by Louisiana's article 1732(6) removable to federal court in order to maintain the desired uniformity of admiralty law.  We reject the district court's conclusion to that effect.

The judgment of the district court denying remand was error; this case is not within the exclusive federal admiralty jurisdiction and is not otherwise removable.  The decision of the court below is REVERSED and the case REMANDED with direction to remand to the state court.

REVERSED WITH DIRECTION TO REMAND TO STATE COURT.